UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-81602-cv-Cannon/Reinhart

TIM TEBBUTT, et al.,

        Plaintiffs,

v.

ROBERT ANDERSON,

        Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES (ECF No. 33)**

Presently before me is Plaintiffs' Motion for Attorneys' Fees (ECF No. 33), which was referred by the Honorable Aileen M. Cannon for a report and recommendation. ECF No. 35. On August 1, 2022, a final default judgment in this ERISA action was entered against Defendant Robert Anderson in the amount of $14,073.87. ECF No. 30. As the prevailing parties, Plaintiffs now seek reimbursement of $10,826.00 for their attorneys' fees. Defendant has not filed a response to the motion and the time for doing so has expired.

1. Entitlement to Attorneys' Fees

Generally speaking, in American litigation each party in a lawsuit bears its own attorney's fees. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). However, there are statutory and

1

contractual exceptions. Here, Plaintiffs' Complaint alleges violations of the Employee Retirement Income Security Act ("ERISA"), and pursuant to ERISA's fee-shifting provision, the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has addressed the framework for lower courts to use when considering attorney's fee motions in ERISA cases. *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242 (2010).

First, "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Id.* at 255 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Then, courts employee a five-factor test:

    (1) the degree of opposing parties' culpability or bad faith;

    (2) ability of opposing parties to satisfy an award of attorneys' fees;

    (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

    (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

    (5) the relative merits of the parties' positions.

*Hardt*, 560 U.S. at 249, n.1. Courts are not obligated to address each one of the five factors in their analysis; the factors "operate only as a guideline" to assist in making decisions regarding attorney's fees under ERISA. *Byars v. The Coca-Cola Company*, 517 F.3d 1256, 1268 (11th Cir. 2008) (citation omitted). *See also Hardt*, 560 U.S. at 254-55.

2

Here, given the entry of a default judgment against Defendant Anderson, I find that Plaintiffs are the prevailing parties and have achieved success on the merits, thus passing the initial threshold for an award of attorneys' fees. Turning to the five-factor test, the entry of a default judgment again looms large. I must, for purposes of evaluating the degree of Defendant Anderson's culpability or bad faith under the first factor, accept as true the facts alleged in the Complaint. *See N Cherry Elec. (PTY) LTD v. Ferreira*, No. 19-CV-23382, 2020 WL 905224, at *1 (S.D. Fla. Feb. 25, 2020) ("By defaulting, a defendant is taken to admit the well-pleaded allegations of fact in a plaintiff's complaint.") (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)). The relevant facts alleged in the Complaint are as follows:

On May 25, 2018, Mr. Tebbutt accepted Defendants Anderson's offer of employment to work at CAD Inc. d/b/a Custom Air Designs ("CAD"). *See* Employment Agreement (Exhibit 1). ECF No. 1 at ¶¶ 8, 14. The Agreement provided that CAD would fully pay for health benefits to cover Mr. Tebbutt and his wife. ¶ 11. Mr. Anderson was the administrator of the CAD Healthcare Plan provided by United Healthcare. ¶¶ 10, 14. According to the Complaint, Mr. Tebbutt accepted the offer of employment based on Anderson's representations that the Tebbutts would continue to have access to the Healthcare Plan as long as Mr. Tebbutt was employed at CAD; this was of particular importance to the Tebbutts because of various health ailments afflicting Mrs. Tebbutt. ¶¶ 12, 13.

3

In early September, Mrs. Tebbutt was admitted to the hospital for kidney stone problems, coverage of which was authorized by United under the Healthcare Plan. ¶¶ 18, 19. On September 21, 2018, without warning or notice to the Tebbutts, Mr. Anderson sent a letter to CAD employees stating that the Healthcare Plan would end immediately for all employees. ¶¶ 20, 21; Exhibit 2. Mrs. Tebbutt's treatment for her kidney stone issues was only halfway complete at the time of Mr. Anderson's unilateral cancellation of the Healthcare Plan. ¶ 23.

Subsequently, the Tebbutts discovered that Mr. Anderson had failed to make payments to United dating back to August 1, 2018. ¶ 24. Accordingly, United rescinded all authorizations for the Healthcare Plan dating back to August 1, 2018. ¶ 25. Nevertheless, Mr. Anderson continued to collect deductions for health benefits from employee paychecks for the period in which he failed to make payments to United in his capacity as administrator of the Healthcare Plan. ¶ 26. United offered Mr. Anderson the opportunity to make back payments to allow CAD employees to continue to have access to health insurance, however, Mr. Anderson declined to make these back payments. ¶¶ 27, 28. Mr. Anderson's failure to provide timely notice of his failure to make payments to United and cancellation of the Healthcare Plan caused the Tebbutts to miss the enrollment period for COBRA. ¶ 29.

Assuming the truth of these facts as I must, I find that they are sufficient to confer a high degree of culpability on Defendant Anderson. Defendant Anderson's decision to continue collecting employee contributions from their paychecks, while

failing to make payments to United is particularly egregious. Accordingly, I find that the first factor weighs in favor of awarding Plaintiffs their attorneys' fees.

The second factor, Defendant Anderson's ability to satisfy an award of attorneys' fees, weighs against Plaintiffs because Judge Cannon's order granting Plaintiffs' motion for a default judgment indicates that Defendant Anderson filed for bankruptcy. ECF No. 29.

With the third factor, the Court considers whether an award of attorneys' fees would have a deterrent effect on others in similar circumstances. I find that this factor weighs in Plaintiffs' favor because an award of attorneys' fees might deter other ERISA plan administrators from engaging in similar behavior.

The fourth factor, whether Plaintiffs' Complaint "sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA" weighs against Plaintiffs. The Complaint was filed solely for the benefit of Plaintiffs and did not seek to resolve a significant legal question.

The fifth factor, considering the relative merits of the parties' positions, weighs in Plaintiffs' favor. Defendant Anderson did not put forth any defense, whereas the incriminating facts alleged in the Complaint establish Anderson's unlawful conduct. Given Plaintiffs' status as a prevailing party and that three of the five factors weigh in Plaintiffs' favor, I find that Plaintiffs are entitled to recover their reasonable attorneys' fees.

2. <u>Calculation of Attorneys' Fees</u>

Attorneys' fees are properly calculated by multiplying the number of hours reasonably spent on litigation by a reasonable hourly rate. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427.

In determining the reasonableness of the rates sought, courts consider prior hourly rates awarded to other attorneys of similar experience in the community and also the court's own knowledge of the rates charged by local practitioners. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96–97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."); *see also Norman*, 836 F.2d at 1303 ("The court . . . is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees . . . ."). Ultimately, courts should assess "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008) (The court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively.").

6

In submitting a request for attorneys' fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301 (emphasis in original)).

"Failing to lodge specific objections is generally deemed fatal" for a party opposing a motion for attorneys' fees. *Auto-Owners Ins. Co. v. Am. Yachts, Ltd.*, No. 06-80073, 2008 WL 11412068 (S.D. Fla. Feb. 6, 2008) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997)), *report and recommendation adopted*, 2008 WL 11412069 (Feb. 26, 2008). However, courts still have a duty to conduct an independent analysis to ensure that the attorneys' fees sought are reasonable. *See Barnes*, 168 F.3d at 428 ("[I]t is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.").

3. <u>Reasonableness of Counsel's Hourly Rates and Time Spent</u>

Plaintiffs seek recovery of $10,826.00 in attorneys' fees, representing nearly 40 hours of work by four timekeepers: Kenneth Minerley, who has been practicing law in Florida for over 30 years, and Jackson Pellingra, who is a fourth-year associate, as well as a paralegal and legal assistant. The billing records submitted reveal that

7

Mr. Pellingra performed the bulk of the work in this case, billing 33 of the 40 hours spent. Given that Defendant Anderson never appeared in this lawsuit, I find that the contributions of four timekeepers was not necessary to achieve the default judgment secured by counsel. *See Adriana Maria De Oliveira SA v. A-Maculate Cleaning Serv., Inc.*, No. 17-CV-21400, 2018 WL 4462186, at *3 (S.D. Fla. June 14, 2018), report and recommendation adopted, No. 17-CV-21400, 2018 WL 6807396 (S.D. Fla. Oct. 30, 2018) (excluding hours not "reasonably expended" due to overstaffing).

As a fourth-year associate, Mr. Pellingra was more than capable of preparing the simple six-page ERISA Complaint, as well as moving for default judgment. I note that the motion for default judgment was not complicated; indeed, it did not even include a memorandum of law. Rather, the three-page motion was accompanied only by a proposed order reiterating the undisputed facts, a brief declaration by Mr. Tebbutt, and a compilation of Plaintiffs' medical bills. ECF No. 28. I find that Mr. Pellingra possessed the experience level to accomplish these tasks on his own. Therefore, I will deduct the seven hours spent by the three other timekeepers.

As for the 33 hours billed by Mr. Pellingra, I find that this was a reasonable expenditure of time, especially given that the motion for default judgment had to be re-filed several times in response to Defendant's bankruptcy and to the District Court's request for additional information.

Finally, I find that Mr. Pellingra's hourly rate of $275 is reasonable for an attorney of his experience level. *See Kleiman v. Wright*, CASE NO. 18-80176-CV-

Bloom/Reinhart, 2020 WL 1980601, at *2 (S.D. Fla. Mar. 17, 2020) (finding $350 to be a reasonably hourly rate for third-year associate). Therefore, Plaintiffs are entitled to an award of attorneys' fees in the amount of $9,075.00, representing 33 hours billed by Mr. Pellingra at an hourly rate of $275.

## RECOMMENDATION

Based on the foregoing, I **RECOMMEND** that Plaintiffs' Motion for Attorneys' Fees (ECF No. 33) be **GRANTED IN PART AND DENIED IN PART** in that Plaintiffs be awarded attorneys' fees in the amount of $9,075.00.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 8th day of December, 2022.

BRUCE REINHART
United States Magistrate Judge